UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-8360-GW(KSx) | Date | October 4, 2018 |
| Title | *Lesia Anson v. Harvey Weinstein, et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Douglas A. Fretty | Jonathan S. Pink |
| | David B. Jonelis |

**PROCEEDINGS:** **DEFENDANT MIRAMAX, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM [53];**

**DEFENDANT HARVEY WEINSTEIN'S MOTION TO DISMISS [84]**

The Court's Tentative is circulated and attached hereto. Court hears oral argument. Based on the Tentative, and for reasons stated on the record, Defendants' Motions are GRANTED IN PART and DENIED IN PART. Plaintiff may file an offer of proof in regard to supplemental jurisdiction by October 25, 2018. Court to issue ruling.

A status conference is set for November 1, 2018 at 8:30 a.m., with a joint status report to be filed by October 30, 2018.

:  05

Initials of Preparer   JG

<u>*Anson v. Weinstein, et al.*</u>; Case No. 2:17-cv-08360-GW-(KSx)
Tentative Ruling on Motions by Defendants Miramax, LLC and Harvey Weinstein to Dismiss Plaintiff's First Amended Complaint

## I.     Background

Lesia Anson ("Plaintiff") filed suit in this Court against Harvey Weinstein; Bob Weinstein; The Weinstein Company, LLC ("TWC"); Dimension Films ("Dimension"); Miramax, LLC ("Miramax"); Lionsgate Entertainment Corporation ("Lionsgate"); Entertainment One Ltd. ("Entertainment One"); Blumhouse Productions, LLC ("Blumhouse"); and Does 1-10 (referred to collectively as, "Defendants") for: (1) copyright infringement under 17 U.S.C. §§ 101 *et seq.*; (2) contributory copyright infringement; (3) vicarious copyright infringement; (4) copyright infringement under Canadian law; (5) copyright infringement under Spanish law; (6) violation of the Lanham Act pursuant to 15 U.S.C. § 1125(a)(1)(B); (7) violation of California Business and Professions Code §§ 17200, 17500 *et seq.*; and (8) declaratory relief under 28 U.S.C. § 2201. *See generally* First Amended Complaint ("FAC"), Docket No. 11. This case arises out of Defendants' allegedly unlawful production and release of a theatrical motion picture entitled *Amityville: The Awakening*, a work derived from Plaintiff's deceased husband's novel *The Amityville Horror*. *See id.* ¶ 8.

**A. Factual Background**

In the FAC, Plaintiff alleges the following:

*1. Parties*

Plaintiff is the widow and heir of Jay Anson ("Author"), author of the best-selling fictional novel *The Amityville Horror* ("Novel"). *See* FAC ¶ 6. Plaintiff is the proprietor of the copyright in the Novel. *See id.*

As to Defendants, TWC is a limited liability company. *See id.* ¶ 11. Dimension is a division of TWC. *See id.* ¶ 12. Harvey Weinstein is the co-founder, co-principal, and co-owner of TWC and Dimension. *See id.* ¶ 14. Bob Weinstein is the brother of Harvey Weinstein and has been Harvey Weinstein's business partner for decades (Harvey Weinstein and Bob Weinstein collectively referred to as, "the Weinsteins"). *See id.* ¶ 15. Bob Weinstein is the co-founder, co-principal, and co-owner of TWC and Dimension. *See id.* At all times relevant, the Weinsteins closely owned and controlled TWC and Dimension. *See id.* ¶ 16. TWC, Dimension, and the

1

Weinsteins were alter egos of one another, such that any separateness has ceased to exist in them, they used the assets of one another, and caused valuable assets to be transferred between one another without adequate consideration. *See id.* ¶ 17. Miramax is a limited liability company founded by and previously owned by the Weinsteins. *See id.* ¶ 13. Lionsgate is a company formed in Vancouver, Canada; Entertainment One is a Canadian distributor; and Blumhouse is a limited liability company. *See id.* ¶¶ 18-20.

### 2. The Novel

The Novel was marketed as a true story, but it is a work of fiction replete with literary creations. *See id.* ¶ 23. On July 29, 1977, the Author registered the Novel for copyright. *See id.* ¶ 24. On March 12, 1980, the Author died and Plaintiff duly renewed the Copyright. *See id.*; FAC Ex. A (copyright renewal registration certificate).

### 3. 1979 Amityville Horror Film

In 1979, Professional Films, Inc. ("PFI") produced a theatrical feature-length motion picture entitled *The Amityville Horror* ("1979 Amityville Horror Film"). *See id.* ¶ 25. PFI created that film based on duly licensed rights in the Novel. *See id.* American International Pictures distributed it. *See id.*

### 4. 2005 Amityville Horror Film

In 2005, Dimension and MGM co-produced, co-financed, and co-distributed a new theatrical feature-length motion picture remake, based upon and derived from the Novel and the 1979 Amityville Horror Film. *See id.* ¶ 26. They titled the 2005 remake *The Amityville Horror* ("2005 Amityville Horror Film"). *See id.*

### 5. 2017 Amityville Horror Film

#### a. Release of the Film

On or around September 27, 2017, TWC and Dimension announced their release of a feature-length motion picture titled *Amityville: The Awakening* ("2017 Amityville Horror Film"). *See id.* ¶ 30. The film was widely reported as a sequel to the 1979 Amityville Horror Film. *See id.* ¶ 32. Google Play allowed that film to stream from October 12, 2017 to November 2017, and it was released in theaters on October 28, 2017. *See id.* ¶ 30. The 2017 Amityville Horror Film was scheduled for release by Lionsgate in Blu-Ray, DVD, and digital HD on November 14, 2017. *See id.* ¶ 31. This film performed poorly in the eyes of critics and grossed only $742 from 10 theaters in its opening weekend. *See id.* ¶ 34.

### b. Production and Distribution of the Film

Dimension and Miramax entered into a pact to produce and distribute sequel motion pictures derived from Miramax's films like the 2005 Amityville Horror Film. *See id.* ¶ 35. The 2017 Amityville Horror Film was developed pursuant to that pact and Dimension, Miramax, and Blumhouse were the credited production companies of the film. *See id.* ¶¶ 35-36. TWC and/or Dimension distributed the film. *See id.* ¶ 36. Blumhouse co-produced the film in collaboration with the Weinsteins, TWC, Dimension, and Miramax. *See id.* ¶ 37. TWC, Dimension, and/or Blumhouse own the foreign distribution rights to the 2017 Amityville Horror Film and intend to distribute the film in foreign territories outside the United States, including in Canada and Spain. *See id.* ¶ 40.

### c. Similarities Between the Film and Novel

The 2017 Amityville Horror Film is substantially similar to the Novel,[1] and the film contains direct references to the Novel and even a scene with the Novel in it. *See id.* ¶¶ 43, 47-48, 50-51. Defendants had access to the Novel. *See id.* ¶ 47. That film constitutes a derivative work of the Novel and Defendants were well acquainted with the Novel from the production and distribution of the earlier 2005 Amityville Horror Film. *See id.* ¶ 45. TWC, Dimension, and Lionsgate distributed promotional trailers for the 2017 Amityville Horror Film that also infringed on Plaintiff's copyright in the Novel. *See id.* ¶ 44. At no point did TWC, Dimension, Miramax, or Blumhouse contact Plaintiff to attain rights to the Novel in making the 2017 Amityville Horror Film. *See id.* ¶ 45.

**B. Procedural History**

Before the Court are two motions to dismiss. The first motion to dismiss is that of Miramax. *See* Notice of Motion and Motion by Defendant Miramax, LLC to Dismiss Plaintiff's First Amended Complaint ("Miramax MTD"), Docket No. 53. Plaintiff opposes the Miramax MTD. *See* Plaintiff's Opposition to Defendant Miramax, LLC's Motion to Dismiss First Amended Complaint ("Opp'n Miramax MTD"), Docket No. 55. Miramax filed a reply. *See* Reply in Support of Motion by Defendant Miramax, LLC to Dismiss Plaintiff's First Amended Complaint ("Miramax MTD Reply"), Docket No. 95. The second motion to dismiss is that of Harvey Weinstein. *See* Defendant Harvey Weinstein's Notice of Motion and Motion to Dismiss

---

[1] In the FAC, Plaintiff includes an expansive list of "some of the more obvious similarities." *See* FAC ¶ 50. The Court will not regurgitate those alleged similarities here, but will incorporate them by reference. *See id.*

3

("Weinstein MTD"), Docket No. 84.  Plaintiff opposes the Weinstein MTD.  *See* Plaintiff's Opposition to Defendant Harvey Weinstein's Motion to Dismiss ("Opp'n Weinstein MTD"), Docket No. 92.  Harvey Weinstein filed a reply.  *See* Defendant Harvey Weinstein's Reply in Support of Motion to Dismiss ("Weinstein MTD Reply"), Docket No. 93.  The Court notes that Harvey Weinstein has joined the Miramax MTD and Miramax has likewise joined the Weinstein MTD.  *See* Notice of Joinder of Defendant Harvey Weinstein, Docket No. 87; Notice of Partial Joinder by Defendant Miramax, Docket No. 91.  Where applicable, the Court will analyze the motions together.[2]

## II.  Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").  The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th

---

[2] Miramax filed a document titled Evidentiary Objections to the Declaration of Douglas Fretty ("Evidentiary Objections"), Docket No. 96.  Though there is merit to some of Miramax's objections, the Court has not relied its decision on any of the documents (or portions thereof) objected to in the Evidentiary Objections.  Therefore, unless the parties nonetheless request that the Court make a determination as to those objections, the Court would decline to do so.

Cir. 1996). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

### III. Motions to Dismiss

**A. First Claim for Relief: Direct Copyright Infringement**

In the first claim for relief, Plaintiff alleges direct copyright infringement against all Defendants except for Entertainment One. *See* FAC ¶¶ 54-65. Harvey Weinstein and Miramax move to dismiss that claim against them. *See* Weinstein MTD at 10-13; Miramax MTD at 5-6.

To demonstrate copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of that work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 361 (1991). Copying may be established by demonstrating: (1) "that the [defendant] had access to plaintiff's copyrighted work," and (2) "that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

*1. Harvey Weinstein*

Harvey Weinstein argues that the FAC fails to allege specific facts to support a claim for direct copyright infringement against him. *See* Weinstein MTD at 10-13. In a somewhat related argument, Harvey Weinstein argues that the FAC fails to allege facts that would form the basis for piercing the corporate veil nor has the FAC alleged that he directly participated in the alleged infringement. *See id.* at 8-10. In response, Plaintiff argues that the FAC sufficiently alleges that Harvey Weinstein participated in the infringing activity and directed the infringing actions of at least TWC and Dimension. *See* Opp'n Weinstein MTD at 5-7. More specifically, Plaintiff argues that Harvey Weinstein authorized, directed, or participated in the direct infringement of the Novel vis-à-vis producing and distributing the 2017 Amityville Horror Film. *See id.* Plaintiff argues that piercing the corporate veil is not necessary for Plaintiff to state her claim against Harvey Weinstein because Plaintiff has alleged *personal liability* against Harvey

5

Weinstein for his own conduct as an affirmative actor. *See id.* at 11-12.

As both parties note, there is no need to determine whether the corporate veil has been pierced if the FAC alleges that Weinstein individually participated in the alleged infringement. The Court would conclude that the FAC sufficiently alleges that he has directly participated in the alleged infringement.[3] The FAC alleges that Harvey Weinstein co-financed and co-distributed the 2005 Amityville Horror Film which he knew to be a derivative work of the Novel. *See* FAC ¶¶ 9, 27. In addition it alleges that Weinstein *co-produced* the 2017 Amityville Horror Film at issue, which contains numerous alleged similarities with the Novel, and that Weinstein did not seek a license from Plaintiff for the underlying rights to do so. *See id.* ¶¶ 37, 50. It is not dispositive that some allegations lump Harvey Weinstein into a group of defendants. *Friedman v. Zimmer*, No. CV 15-502 GHK-(Ex), 2015 WL 6164787, at *2 (C.D. Cal. July 10, 2015) (holding "though some courts have found that lumping defendants together can render a claim infirm, even under Rule 8's liberal pleading standard, they have done so only in situations where the pleadings are largely incomprehensible . . . . At the pleadings stage, the Court would find these allegations sufficient. . . . Plaintiff's infringement claim may be based on a generalized allegation [meaning one that lumps a defendant into a group of defendants], but it fairly puts the Moving Defendants on notice of the basis for his claim—their involvement in making and distributing a film containing infringing material. If some of the Moving Defendants had no involvement in creating and reproducing the Film's score or in distributing the Film, that is a defense they can raise in their Answer and we can resolve the issue at summary judgment."). As such, the Court would deny the Weinstein MTD on this front and would allow this claim to proceed against Harvey Weinstein.

    2. *Miramax*

Miramax argues that the FAC does not properly allege direct copyright infringement against it because the allegations in the FAC concerning the exploitation or release of the 2017 Amityville Horror Film lump Miramax into a group of defendants. *See* Miramax MTD at 5-6. According to Miramax, the only allegations specifically alleged about the release of the film implicate TWC, Dimension, and Lionsgate. *See id.* at 6 (citing FAC ¶¶ 30-31). By contrast, Plaintiff argues that she adequately alleges direct copyright infringement against Miramax. *See*

---

[3] At the outset, the Court would note that Harvey Weinstein does not dispute in his MTD that the 2017 Amityville Horror Film is substantially similar to the Novel, that he had access to the Novel, or that Plaintiff owns a valid copyright. *See generally* Weinstein MTD. The Court will find those elements adequately pleaded.

6

Opp'n Miramax MTD at 5-7. Plaintiff argues that Miramax cannot argue that its failure to exploit, release, or distribute the 2017 Amityville Horror Film saves it from this claim. *See id.* at 6. Plaintiff argues that Miramax's co-production of the film is sufficient to confer liability and that the lumping of Miramax into a group of "Defendants" in certain allegations is permissible. *See id.* at 6-7.

The FAC proffers a number of allegations against Miramax that relate to this claim.[4] The FAC alleges that the production and distribution of the 2017 Amityville Horror Film was part of a pact between Miramax and Dimension to produce derivative works of Miramax properties, with the 2005 Amityville Horror Film constituting the property of Miramax when the 2017 Amityville Horror Film was released. *See* FAC ¶¶ 28, 35-37. According to the FAC, Miramax was a credited production company of that film and Miramax was aware of that infringement. *See id.* ¶¶ 36-37, 45. Though the Court will not regurgitate all the details of those allegations here, it would conclude that Plaintiff has sufficiently alleged direct copyright infringement as to Miramax.

### B. Second Claim for Relief: Contributory Infringement

In the second claim for relief, the FAC alleges contributory copyright infringement against all Defendants except Entertainment One. *See* FAC ¶¶ 66-73. Harvey Weinstein and Miramax move to dismiss that claim. *See* Weinstein MTD at 13-15; Miramax MTD at 6-8.

"[A] defendant is a contributory infringer if it: (1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).

#### 1. Harvey Weinstein

Harvey Weinstein argues that Plaintiff makes mere conclusory allegations against him as to contributory infringement. *See* Weinstein MTD at 13-15. On the other hand, Plaintiff argues that the FAC properly alleges contributory copyright infringement against Harvey Weinstein as an individual. *See* Opp'n Weinstein MTD at 7-9. As with the first claim for relief, Plaintiff argues that piercing the corporate veil is unnecessary. *See id.* at 11-12.

As to Harvey Weinstein's knowledge of a third party's infringing activity, the FAC alleges that Harvey Weinstein was intimately familiar with the Novel, in part because he co-

---

[4] As with the Harvey Weinstein MTD, the Court would note that Miramax does not dispute that the 2017 Amityville Horror Film is substantially similar to the Novel, that it had access to the Novel, or that Plaintiff owns a valid copyright. *See generally* Miramax MTD. The Court would find those elements adequately pleaded.

financed and co-distributed the 2005 Amityville Horror Film vis-à-vis his former company Miramax.  *See* FAC ¶¶ 9, 27.  According to the FAC, Harvey Weinstein proceeded to co-produce the 2017 Amityville Horror Film through TWC and Dimension, intending to exploit the Novel without obtaining any licensing rights.  *See id.* ¶¶ 9, 32, 37.  As to material contribution, the FAC alleges that Harvey Weinstein co-produced the 2017 Amityville Horror Film and alleges that he closely controlled all significant business and legal affairs of TWC and Dimension, with those companies distributing and producing the 2017 Amityville Horror Film.  *See id.* ¶¶ 9, 16, 32, 37.  At this stage, the Court would conclude that the FAC sufficiently alleges that Harvey Weinstein had knowledge of others' infringing acts and that he materially contributed to that infringement.

        2. *Miramax*

Miramax argues that the FAC's allegations are insufficient to plead contributory infringement against Miramax.  *See* Miramax MTD at 6-8.  Unsurprisingly, Plaintiff argues that the FAC sufficiently alleges contributory infringement against Miramax because she has alleged a third party's direct infringement, Miramax's actual or constructive knowledge of that infringement, and material contribution to that infringement.  *See* Opp'n to Miramax MTD at 7-9.

Unlike with the allegations against Harvey Weinstein, there are insufficient allegations identifying the third party infringement that Miramax materially contributed to in this action.  It is inadequate that the FAC alleges that "Defendants knew or had reason to know that the conduct of such other parties infringed Plaintiff's copyright . . . ."  *See* FAC ¶ 67.  Nor is it enough that the FAC broadly alleges (albeit in the vicarious infringement section) that "Defendants had the right and ability to supervise the infringing conduct of others, including without limitation the infringing conduct of co-Defendants and internet users . . . ."  *See id.* ¶ 75.  The Court would dismiss the second claim for relief against Miramax as conclusory.  *Iqbal*, 556 U.S. at 679 (citations omitted).

**C. Third Claim for Relief: Vicarious Infringement**

In the third claim for relief, the FAC alleges vicarious copyright infringement against all Defendants except Entertainment One.  *See* FAC ¶¶ 74-82.  Harvey Weinstein and Miramax move to dismiss that claim.  *See* Weinstein MTD at 15-16; Miramax MTD at 8-10.

"To succeed in imposing vicarious liability, a plaintiff must establish that the defendant [1] exercises the requisite control over the direct infringer and [2] that the defendant derives a

8

direct financial benefit from the direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). As to the requisite control, "[a] vicarious infringer exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Williams v. Gaye*, 895 F.3d 1106, 1132 (9th Cir. 2018) (internal citation and quotation marks omitted). As to the requisite direct financial benefit, a "[f]inancial benefit exists where the availability of infringing material acts as a draw for customers." *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) (internal quotation marks and citations omitted). "[T]he size of the 'draw' relative to a defendant's overall business is immaterial. Indeed, [t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir.), *cert. denied*, 138 S. Ct. 504, (2017) (internal quotation marks and citation omitted).

### 1. Harvey Weinstein

Harvey Weinstein again argues that the allegations in the FAC are conclusory, but this time as to vicarious infringement. *See* Weinstein MTD at 15-16. In response, Plaintiff asserts that the FAC sufficiently alleges vicarious copyright infringement against Harvey Weinstein as an individual, and argues that piercing the corporate veil is unnecessary. *See* Opp'n Weinstein MTD at 9-12.

The FAC sufficiently alleges that Harvey Weinstein had the requisite control over other direct infringers TWC and Dimension. More specifically, it alleges that Harvey Weinstein, as co-founder, principal, and co-owner very tightly controlled TWC and Dimension's operations, and that he exercised control in personally producing the 2017 Amityville Horror Film with the intent to infringe the Novel's copyright. *See* FAC ¶¶ 7, 9, 14, 16, 37. These allegations demonstrate that Harvey Weinstein had the requisite control over those companies' conduct in infringing on the Novel. The FAC also sufficiently alleges that Harvey Weinstein had a direct financial benefit from the infringement. As a producer of the 2017 Amityville Horror and as co-owner of TWC and Dimension which co-produced and co-distributed that film, it is more than plausible that Harvey Weinstein received a financial benefit based on the 2017 Amityville Horror Film's performance (as weak as that performance may have been). *See id.* ¶¶ 14, 37.

### 2. Miramax

Miramax asserts that the FAC does not adequately allege who the other infringers are that Miramax is responsible for, how Miramax had the ability to supervise their conduct, and what type of direct financial benefit Miramax gained from their conduct. *See* Miramax MTD at 8-10. In response, Plaintiff argues that she adequately alleges vicarious copyright infringement against Miramax. *See* Opp'n Miramax MTD at 9-10.

As with the claim for contributory copyright infringement, the Court would agree with Miramax that Plaintiff has failed to allege vicarious copyright infringement against it. The FAC does not contain sufficient allegations against Miramax that, if true, would establish vicarious infringement. It is not enough that the FAC merely alleges that all Defendants "had the right and ability to supervise the infringing conduct of others." *See* FAC ¶ 75. No allegations explicitly identify *which* third party infringement Miramax is vicariously liable for here, and in turn, there are no allegations demonstrating Miramax's requisite control and direct financial benefit in any third party infringement. *See generally* FAC.

### D. Fourth and Fifth Claims for Relief: Foreign Copyright Infringement

The fourth and fifth causes of action in the FAC plead copyright infringement under foreign copyright laws. In the fourth claim for relief, the FAC alleges copyright infringement under the Canadian Copyright Act against all Defendants. *See* FAC ¶¶ 83-95. In the fifth claim for relief, the FAC alleges copyright infringement under the Spanish Copyright Act. *See id.* ¶¶ 96-104.

The Ninth Circuit has recognized the "potential" for federal courts to hear copyright claims arising under foreign laws, *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 702 (9th Cir. 1995), but it has never held that such courts *must* hear those claims. *See Subafilms, Ltd. v. MGM Pathe Commc'ns Co.*, 24 F.3d 1088, 1095 n.10 (9th Cir. 1994) (noting in a footnote that "at least one court has recognized that actions under the copyright laws of other nations may be brought in United States," but also citing opposing authority); *X17, Inc. v. Hollywood.TV, Inc.*, 2008 WL 4527865, at *5 (C.D. Cal. June 24, 2008) ("While [] opinions [like *Creative Tech.*] indicate that the exercise of subject matter jurisdiction over foreign copyright claims is not necessarily erroneous, they do not indicate that a court is required to exercise such jurisdiction.").

28 U.S.C. § 1367(c)(4) provides that in "exceptional circumstances" a court may decline supplemental jurisdiction for "compelling reasons." Indeed, multiple courts in this circuit have

10

declined jurisdiction over foreign copyright claims in somewhat similar situations. *See e.g.*, *Friedman v. Zimmer*, No. CV 15-502 GHK-(Ex), 2015 WL 6164787, at *6 (C.D. Cal. July 10, 2015) ("[W]e have discretion to decline supplemental jurisdiction in 'exceptional circumstances' for 'compelling reasons. . . . Plaintiff's assertion of moral rights claims based on foreign laws represents an exceptional circumstance, and we think there are compelling reasons to decline jurisdiction."); *ITSI T.V. Prods., Inc. v. California Auth. of Racing Fairs*, 785 F. Supp. 854, 866 (E.D. Cal. 1992), *aff'd in part, rev'd in part sub nom. on different grounds*, *ITSI T.V. Prods., Inc. v. Agric. Associations*, 3 F.3d 1289 (9th Cir. 1993) (though prior to *Creative Tech.*, the district court denied leave to amend the complaint to state a cause of action under Mexican copyright laws because "it appear[ed] to [the court] that American courts should be reluctant to enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so."). In the field of patent law, courts have also declined to exercise supplemental jurisdiction over foreign patent claims in certain circumstances. *See, e.g.*, *Voda v. Cordis Corp.*, 476 F.3d 887, 898 (Fed. Cir. 2007) (declining to exercise supplemental jurisdiction over foreign patent claims because of "comity, judicial economy, convenience, fairness, and other exceptional circumstances").

This case is similar to those cited above, in which courts declined to exercise supplemental jurisdiction over foreign intellectual property claims. Though this situation is somewhat different from *Friedman* in that the application of foreign law (*i.e.* foreign copyright infringement) here does not constitute an unfamiliar general concept in U.S. copyright law (*i.e.* moral rights), this is still a situation where "judicial economy and convenience militate against the exercise of supplemental jurisdiction." *See Friedman*, 2015 WL 6164787, at *7. Four main points cut toward declining supplemental jurisdiction. First, like in *Friedman*, the Court would consume far more judicial resources in addressing the Spanish and Canadian claims than courts in those respective countries would. *See id.*; *see also Voda*, 476 F.3d at 898 (noting that the court lacked "institutional competence in the foreign patent regimes at issue in this case, [and] more judicial resources could be consumed by the district court than the courts of the foreign patent grants."). Second, also similar to *Friedman*, here there is a "significant risk of jury confusion in a trial involving both domestic and foreign law copyright claims [that] may require us to conduct a separate trial [as to those claims] . . . ." *Friedman*, 2015 WL 6164787, at *7. Third, there would likely be increased costs in obtaining and translating evidence and experts in

11

foreign copyright law. *See id.* Fourth, Plaintiff seeks significant remedies targeting actions abroad, including an injunction for the foreign copyright claims, damages, and the imposition of constructive trusts. *See* FAC Prayer for Relief, at pgs. 45-47; *Niven v. Brewster*, No. CV-10-04376-GAF-(PJWx), 2012 WL 13005443, at *5 (C.D. Cal. Mar. 2, 2012) (holding that in part "because Plaintiff seeks substantial remedies for the Australian copyright law claims − including an injunction in Australia against further copyright infringement, an order directing that infringing materials be returned or destroyed and that a public apology be made, an accounting, and additional damages in the Court's discretion − these claims 'substantially predominate' over his federal copyright infringement claim."). Considering these reasons together, the Court would decline supplemental jurisdiction over the Spanish and Canadian copyright claims because the case presents "exceptional circumstances" in which there are "compelling reasons" to do so.[5] *See* 28 U.S.C. § 1367(c)(4).

**E. Sixth Claim for Relief: False Advertising**

In Plaintiff's sixth claim for relief, the FAC alleges false advertising under 15 U.S.C. § 1125(a)(1)(B). *See* FAC ¶¶ 105-114. Harvey Weinstein and Miramax move to dismiss that claim against them. *See* Weinstein MTD at 19-20; Miramax MTD at 11-16.

The elements of a Lanham Act § 43(a) false advertising claim are: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement . . . ." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

As against both Harvey Weinstein and Miramax, the sixth claim for relief fails. *See* FAC ¶¶ 105-114. As Harvey Weinstein points out, the FAC does not explicitly indicate which false statement Plaintiff targets. The closest paragraph to identifying an allegedly false statement still does not adequately do so and reads as follows:

> Plaintiff is informed and believes and thereon alleges that Defendants have

---

[5] It appears that Plaintiff might not fully grasp the complexity of these issues because she has simply attached the Copyright Act of Canada and the Intellectual Property Act of Spain, which is a far cry from the compendium of foreign authority that the Court would need to rule on such claims. *See* Declaration of Douglas Fretty Exs. 3-4, Docket Nos. 55-4, 55-5.

12

misrepresented to their licensees, potential licensees and to members of the public, *in Defendants' commercial marketing, promotion and advertising*, that the 2017 Amityville Horror Film is a bona fide *sequel* to their 2005 Amityville Horror Film and to the 1979 Amityville Horror Film and *a continuation of this film franchise*, with a willful intention to mislead and misrepresent the nature, characteristics and qualities of Defendants' goods, services or commercial activities.

*See id.* ¶ 107 (emphasis in original). This and other allegations in the FAC are insufficient to properly plead false advertising. *Iqbal*, 556 U.S. at 679 (citations omitted). The Court need not determine whether the heightened pleading standard in Rule 9(b) applies because the FAC fails to even satisfy the pleading standards of Rule 8(a).

### F. Seventh Claim for Relief: UCL Claim

In the seventh claim for relief, the FAC alleges a UCL claim that seems to hinge on false advertising. *See* FAC ¶¶ 115-124. "The Ninth Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994); *see also Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 (9th Cir. 2002) (plaintiff's "California unfair competition claim fails because its related Lanham Act claims fail"); *Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152-53 (9th Cir. 1996), *abrogated on other grounds* (dismissal of plaintiff's § 17200 and § 17500 claims were proper because plaintiff's Lanham Act claim was properly dismissed); *Cosmos Jewelry, Ltd. v. Po Sun Hon Co.*, No. 06-56338, 2009 WL 766517, at *2 (9th Cir. Mar. 24, 2009) ("Because we affirm the finding of trademark infringement, we also affirm the finding of unfair competition"). Because the Court has found insufficient Plaintiff's false advertising claim under the Lanham Act, the Court would dismiss the UCL claim for the same reasons.

### G. Eighth Claim for Relief: Declaratory Relief

In the eighth cause of action, the FAC alleges a claim for declaratory relief. *See* FAC ¶¶ 125-128. Both Harvey Weinstein and Miramax argue that Plaintiff's claim for declaratory relief is duplicative of her other causes of action, and thus must be dismissed. *See* Weinstein MTD at 22-23; Miramax MTD at 16-17. The Court would agree because the FAC explicitly hinges this cause of action on Plaintiff's copyrights, and the FAC's first through third claims for relief already address federal copyright infringement. *See* FAC ¶ 126 (alleging that there is an

13

actual and justiciable controversy in that "Plaintiff contends and Defendants deny that Defendants infringed and will continue to infringe on Plaintiff's copyrights under Federal copyright law . . . ."). As such, the eighth claim for relief is duplicative and the Court would dismiss it. *Stavrinides v. Vin Di Bona*, No. 2-18-CV-00314-CAS-(JPRx), 2018 WL 1311440, at *6 (C.D. Cal. Mar. 12, 2018) (dismissing a claim for declaratory relief "[b]ecause these rights [in the declaratory relief claim] would necessarily be determined through the adjudication of plaintiffs' copyright infringement claim, [so] declaratory relief is duplicative and unnecessary.").

IV. <u>Conclusion</u>

Based on the foregoing discussion, the Court would **GRANT IN PART** and **DENY IN PART** the Miramax MTD and Weinstein MTD.

As to Harvey Weinstein, the Court would **DENY** the Weinstein MTD as to the first, second, and third claims for relief. The Court would **DECLINE TO EXERCISE** supplemental jurisdiction over the fourth and fifth claims for relief. The Court would **GRANT** the MTD as to the sixth, seventh, and eighth claims for relief without prejudice.

As to Miramax, the Court would **DENY** the Miramax MTD as to the first claim for relief. The Court would **DECLINE TO EXERCISE** supplemental jurisdiction over the fourth and fifth claims for relief. The Court would **GRANT** the Miramax MTD as to the second, third, sixth, seventh, and eighth claims for relief without prejudice.